Good morning, Your Honors. May it please the Court. My name is Rebecca Pote, and I'm arguing today on behalf of the petitioners Rosa Maria Perez Alba and her four children, Edmundo Jr., Daniel, Samuel, and Marisol. I'd like to reserve three minutes for rebuttal. Your Honors, this case involves an almost eight-year battle for the Alba family to gain lawful admission to this country. That journey started when the Alba family voluntarily turned themselves in to the INS in 1996, believing themselves to be eligible for suspension of deportation. That journey should have ended when Mr. Alba, Rosa Maria's husband and the father of the four children, was found by the IJ during the immigration proceedings concerning the whole family to qualify for suspension of deportation. Mr. Alba subsequently became a permanent resident, and on that basis, the entire family filed a motion to reopen. However, unfortunately, the Alba family's journey did not end there. Instead, relying on the wrong legal standard and ignoring a presumption in their favor, the BIA here refused to allow the Albas to reopen their case. Ever since then, the Alba family has been waiting for the result to which they are legally entitled, the ability to have an immigration judge hear their case based on the new evidence of eligibility to be in this country. I don't want to simply rehash everything that's in the briefs, but I believe there's three main points that need to be clarified or emphasized. First, the presumption of eligibility based on marriage is at the heart of this case, and the fact that apparently the BIA did not apply this presumption lies at the heart of the abuse of discretion in this case. According to the BIA's decision, the BIA found that the respondent does not appear to be eligible for relief. This statement indicates where the BIA went wrong. They were not supposed to be looking for appearances of eligibility. They were supposed to be looking for appearances of ineligibility under the presumption stated in Garcia. We believe that Ninth Circuit and BIA law requires the BIA to perform a three-step process. First, when getting a motion to reopen, the BIA should look at the motion to reopen and determine whether on the face of that motion it's based on marriage. Here, this was evident on the face of the motion to reopen because Mrs. Alba stated that Mr. Alba had been found eligible for suspension of deportation, was granted it, and then became a permanent resident. The second step is that the BIA should have determined whether this was a marriage entered into before or after deportation proceedings commenced. If it was after deportation proceedings commenced, then the Arthur rule, as well as in re of the Larde-Pacheco, which the government cites, would have applied. However, if the marriage was prior to deportation proceedings commencing, there's no other rule to apply than that laid out in Garcia. I think the Eisen case, this circuit's case, makes very clear the case is not concerning the immigration marriage fraud amendments, not concerning a marriage entered into after deportation proceedings commenced and after the immigration marriage fraud amendments apply, then Garcia, the earlier rule, the presumption of eligibility, applies. Here, the court could have looked simply at the motion to reopen and gleaned that the marriage was entered into long before deportation proceedings commenced. They could have looked at the docket of the case. They could have looked at their own order denying the appeal of the suspension of deportation because in that very order, in footnote one, it mentions Edmundo Alba being the lead respondent in the case and having been granted suspension of deportation. Therefore, on the basis of all of this, the BIA could have determined that Mr. Alba was clearly in deportation proceedings with his family and with his wife. At that point, the third step of the process begins. The presumption stated in Garcia applies. The presumption in Garcia says that unless clear ineligibility is apparent in the record, the board should generally grant motions to reopen. I think there's two important things in that statement. One is that you look for clear ineligibility, which is a very low standard. But number two, you look at the entire record. Counsel, on the motion to reopen, none of the right documents were attached. Is that right? I think the document, in terms of the I-130, no, an acknowledgment of receipt was attached. The I-130 as well was not attached, and the I-485 was not attached. So what do we do with that? I think in cases in which the presumption doesn't apply and when the record doesn't show you anything else, then the BIA can use its discretion to deny the motion to reopen. But I think in cases like this, where there's a marriage and where there's a presumption, I think the BIA has to look at the entire record laid out before it. And I think it has to, under the law, go back and look at the record. And in this case, the record was replete with evidence of the fact that they were eligible. The applications for suspension of deportation were over 1,000 pages, and the IJ below made a comment that Mr. Alba and the family had done a very good job of putting together their suspension of deportation applications. So I think when you're in a situation when it's marriages prior to deportation proceedings, even if there's procedural errors, those procedural errors should not trump the application of the Garcia presumption. Mr. Alba is now a U.S. citizen. Yes, he is. He was granted citizenship. I think his oath was August of 2004. Since that time, have you gone to the – have you approached the government and asked them if they would be willing to stipulate to a remand? Yes. We engaged in some discussion of it, and they're – Have they at all been receptive to the request? They've been somewhat receptive, and that's actually why the appeal took so long, was because we were engaging in settlement discussions about whether or not his citizenship would make a difference. However, they indicated after his citizenship was granted that they were – they would like to continue with the appeal. So we felt that we had no other option at this time. We have been approached by the Immigration Service to tell us that they were in favor of mediation whenever it was appropriate. So from your standpoint, would this be a case that we should be referring to mediation? Yes, we would like to go to mediation. I mean, I think that the situation at this point with Alda's family, now that he has been granted citizenship, yeah, it's the perfect case for mediation. So we'll ask the government that same question. Okay. That would be great. Actually, I'd like to reserve my remaining time for that. Could I ask you, if they were deported, would they be able to come right back in? My understanding is that if they were deported, that it then becomes an issue with the consulate about – I think it's in their discretion about when they're allowed to come back in. They would be allowed to come back in, I believe, but I think it would be difficult and might take a long time. I'm actually not sure of the exact rules on that. Maybe there's something to become sure of, because – I thought they had to have an immediately available visa to be in the right position for reopening. I'm sorry? I thought they had to have a visa preference, an immediately available visa. I think that in cases where this presumption applies, that you don't need to show an immediately available visa. You can show that you're prima facie eligible for one of these visas. I'm not so sure of that. But they would be now. They would be now, yes. With a husband becoming a naturalized citizen, right? Yes, they would be. They would be eligible. Now, there was something in the briefs at some point about the fact that they did not voluntarily depart. What does that play in their ability to return to the country if they were deported? I think under the recent 2004 Elion versus Ashcroft, they actually – this is a transitional rules case, and so their date to voluntarily depart is actually not triggered until this court issues a mandate. So at this point, they haven't violated their voluntary departure date, and I believe they have 30 days on which to do so from the date the mandate is issued. You can say the rest of your time, and we'll head for the government. Mr. Cunningham. Good morning, Your Honors. Judge Fletcher, Judge Paez, Judge Nunes, nice to see you again. Yes. John Cunningham from the Department of Justice, appearing on behalf of the Attorney General. May it please the Court. The Board did not abuse its exceptionally broad discretion over motions to reopen in denying this barest of bare bones motions. Judge Fletcher, you can put your finger on it. The problem that the Board had in this case was that the motion to reopen filed by the petitioners did not include either a completed application for adjustment of status or an approved visa petition. I could find no case in the Board's jurisprudence or in this Court's jurisprudence which holds that the Board should have granted a motion to reopen that had neither of those documents attached. My colleagues have emphasized the holding in Garcia that in certain circumstances, a presumption of eligibility should be granted or should be applied. But in that case, in Garcia and in Bilardo Pacheco, the other leading Board President, there was an application filed. The holding in those cases was that in certain circumstances, they don't need to show an approved visa petition. Judge Paez, you may remember that I appeared before you in Seattle last year in the case of Laura Luis-Hernandez, which was mostly about the injunction provisions in the cancellation statute for abused and harmed women. But it also included a question of adjustment of status. And the Court noted in that case, you wrote for the Court, was that the filing of the application establishes the priority date. And that's what Garcia says the same thing. The Board's decision in Garcia says exactly the same thing. If you have neither, and here we have neither, the Board does not have any basis to find that the applicant moving for reopening has met the standards of Section 245A, which says that if you are moving to reopen, in order to seek adjustment of status, you have to show that your prima practice is sought. And I think that's where Garcia comes in. Well, let's talk about the change in circumstances here. We've now got a citizen father. We have a mother and four children. Everyone has behaved admirably in their conduct here in the United States. Now, what can we do for them? I think that, I mean, I take my colleagues at their word. I assume it's true that Mr. Garcia is a U.S. citizen, and that, I'm sorry, Mr. Alba is a U.S. citizen, and that there may be an avenue now for these petitioners. They will no longer have a priority date problem. They would be instantly eligible for an immigrant visa if the wheels turn and the visa petition is approved. I guess procedurally, my answer, Your Honor, is that that's not this case. And that's why, as a matter of orderly procedure, we said to petitioners, that's not what the Board had in front of it here at the time the Board acted. Well, I understand all that. But if we were to refer you to mediation, what could the government do in this case? I must respectfully hedge on that, Your Honor. I can't say what we'd do, because, of course, this would be ultimately up to the Department of Homeland Security. They'd make the call. But it would be possible, though, to remand, just to stipulate a remand to the Board, and then there could be a joint motion to reopen. I don't. I have to hesitate. Because one of the circumstances for getting a reopen beyond the time deadline and the number of applications is if there's a joint motion to reopen. They don't have to. The Board doesn't have to, but it is a basis. Again, Your Honor, I mean, I can't speak for Homeland Security on this. They would have to. The joint motion would be Homeland Security, not my office. All right. I understand. And I guess I do hesitate a bit in the sense of I'm not sure whether it's appropriate in this proceeding to remand on the basis of something that happened post-record. I mean, we're back to that problem. This, the gaining of U.S. citizenship by Mr. Oliver happened after the immigration of the Board. I understand that. I know. So I guess I'm stuck a bit, Your Honor. I don't quite know what to say. I understand the Court's concerns, but I do hesitate because Let me ask you this, to follow up what Judge Anoonan asked earlier. If they were deported, what are the difficulties that they would have in returning? I think they could have a substantial difficulty, which, again, is one of the reasons for the Court's concern here. They did not depart within the deadline set by the Board. My colleague errs in saying that the Illion case helps here. It doesn't, because the Illion case says that if you file a petition for review of the underlying deportation order, that freezes your voluntary departure period. The order in question here is not the order that you have before you now. It's the earlier order. And they didn't file a petition for review in that case. And so the voluntary departure clock ran, and it expired, if my memory is right, on May 29th, 2002. So they would be subject, I think, to the penalties for failure to comply with a voluntary departure period. I think there are waiver provisions in place that they could seek a waiver on the Mexico side of the border. They could seek a waiver from the U.S. Consulate or from the Attorney General to come back in, notwithstanding their failure to voluntarily depart. But they do have that hurdle to overcome. There's no question about that. So Mr. Gillingham, could I just press you a little bit more? I understand you come in here, and you've been given a case, and you do your best to defend the government's position. But we as judges like to think of what the government is doing as something that has some meaning. And I look at a government, which I think in its administration says it's devoted to the family and the preservation of family values. I know the government lets thousands of people cross the border because it does not employ enough people to prevent it. And then I see them concentrating on this one family, where we have a United States citizen and several people who could come in and keep the family together. And I just wonder, what is the government doing? Why is it pursuing this? Now, you may think that's not your question to answer, but it's very troubling. I understand the Court's concerns. Mediation may be the avenue. I mean, if the Court wishes to do that, that's fine. We have had cases. I've been on panels where the government has stipulated to a remand for a number of different reasons. I mean, it doesn't seem like it's out of the box. Well, that's the other avenue, Your Honor. I have no instructions on that point. But if the Court could be- Could you get instructions on that point? I could, Your Honor. But I'd have to communicate with the Court subsequently upon my return to Washington. I could do that. And Your Honor's question focuses on a remand. Is that- Well, no. Well, I guess any way to accomplish that, if we have to facilitate, referring you to the Court's mediation. And there's been some effort. I think Judge Fletcher is correct. There's been some contact between the Court and various agencies to try and facilitate some of these cases, like this case, through mediation to work it out so this family is not torn apart. Yes. I will. I will. Is that what the Court wishes me to do, to communicate with you by letter upon my return to Washington? Is that what you would wish me to do? Well, we have several avenues. We could simply send it to mediation, and you could pursue getting that permission. That might be the cleanest way. Why don't we try that in this case? That's fine. Okay. I think the Court has any further questions? I thank the Court for its attention. I bid you good morning. Well, I guess all we want to know from you is, is that an appropriate course from your standpoint? I think that is an appropriate course. And I was just going to point out the only thing I'd like to point out is that in the two cases you won, Wilson and Constantinova, I think the motion with remand with a non-opposition by the government is exactly what would be the appropriate thing here. So, yes, that would be wonderful. And if there are no further questions, I'll stop. Okay. Thank you. Matter will be submitted for the moment. Thank you.
judges: B Fletcher, Noonan, Paez